JOHN W. LOVELL COMPANY, Appellant, *v.* HENRY O. HOUGHTON et al., Respondents.

Where an author or publisher, who has obtained a copyright, thereafter publishes a statement that the same book published by another is unauthorized and infringes his copyright, the communication is privileged and its character as such cannot be taken away by proof that the book was not the subject of copyright; it must also be proved that he had knowledge of the invalidity of his copyright, and so that he acted in bad faith.

Before the expiration of the copyrights upon certain books which had been published by defendants, the author obtained a copyright for a revised edition, which defendants also published. Plaintiff after the expiration of the original copyrights published an edition of said works, which contained a great number of alterations made by the author and which could be found only in the revised edition. Thereupon defendants published an article cautioning the public from pur-

Statement of case.

chasing plaintiff's book, characterizing it as "a direct infringement of copyright and a violation" of their rights. In an action for libel, *held,* that, in the absence of proof that defendants knew that their revised edition was not the subject of copyright, or that they had any other motive than protecting their supposed interests, the publication was privileged and plaintiff was properly nonsuited.

Reported below, 22 J. & S. 60.

(Argued October 17, 1889; decided November 26, 1889.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made at the December Term, 1886, which affirmed a judgment in favor of defendants, entered upon a verdict directed by the court.

This action was brought to recover damages for certain written and oral statements, made by the defendants concerning plaintiff's editions of two of the poet Longfellow's prose works, "Hyperion" and "Outre-Mer."

The plaintiff claimed the statements to have been false, that they were maliciously made, and resulted in great damage to its business. These books were published by the plaintiff in the year 1882. The early edition of "Hyperion" was published in 1839, and of "Outre Mer" 1835. It appeared, therefore, that the limit of time for the terms of the copyrights had expired. Such limit, together with the renewal permitted, being forty-two years. But in 1869 Mr. Longfellow obtained a copyright for a revised edition of such works; the president of the plaintiff, being unable to purchase a copy of the early edition of "Hyperion," sent his brother to the library of Harvard University, with instructions to carefully compare a copy of the later edition with a copy of the first edition, which was there preserved, and to make the former, by alterations, an exact copy of the latter. He did not succeed in making it an exact copy, for the book, when published, contained one hundred and eighty-three variations, made by Mr. Longfellow, and constituting a part of the ground of his claim for copyright. "Outre-Mer" also contained variations from the original editions, which were in defendants' editions.

The defendants had been, with their predecessors, for a long time the publishers of the works of Mr. Longfellow, under contract with him, with respect to the same, and the copyrights thereof, and were then publishing editions of "Hyperion" and "Outre-Mer" revised by Mr. Longfellow, for which the copyright had been obtained in the year 1869. Immediately after the publication of plaintiff's edition of "Hyperion" it was brought to the attention of the defendants. An examination at once disclosed that plaintiff's edition was not an exact copy of the first edition, but contained alterations and variations which could only be found in Mr. Longfellow's revised edition of 1869. Thereupon the defendants published a caution to the trade and public against buying plaintiff's book, characterizing it as "a direct infringement of copyright, and a violation of the rights of Mr. Longfellow's heirs, and his publishers." The court directed a verdict for the defendant.

Other facts sufficiently appear in the opinion.

*Roger Foster* for appellant. State courts had, when this suit was brought, concurrent jurisdiction with federal courts over cases "arising under the Constitution and laws of the United States." (Judiciary Act of 1875 ; 18 St. at Large, 470 ; 1 Supp. U. S. R. S. 173; *United States* v. *Jones*, 109 U. S. 513; U. S. R. S. § 629; *Dudley* v. *Mayhew*, 3 N. Y. 9; *Hovey* v. *R. T. P. Co.*, 57 id. 119; *King* v. *Cornell*, 106 U. S. 395, 396–399; *Hyde* v. *Ruble*, 104 id. 407.) But the case at bar does not arise under or out of the copyright laws of the United States. (*Snow* v. *Judson*, 38 Barb. 210; *Hovey* v. *R. T. P. Co.*, 57 N. Y. 119, 126; *Albright* v. *Teas*, 106 U. S. 613; *Hartell* v. *Tilghman*, 99 id. 547; *Patterson* v. *Kentucky*, 97 id. 501; *C. S. S. Co.* v. *Clark*, 100 N. Y. 365; *H. S. M. Co.* v. *Reinoehl*, 102 id. 167.) The incorporation of the plaintiff does not impair its right to sue. (*M. O. Co.* v. *Hawkins*, 4 H. & N. 146; *Manure Co.* v. *L. C. M. Co.*, L. R., 9 Ex. 218; *T. C. F. Co.* v. *Massam*, L. R., 74 Ch. Div. 763; *S. and L. Bank* v. *Thompson*, 18 Abb. Pr. 413.) This is not an

action of slander of title, as is claimed by the defendant.
(Pollock on Torts, 261; *T. C. F. Co.* v. *Massam*, L. R., 14
Ch. Div. 763; *W. C. M. Co.* v. *L. C. M. Co.*, L. R., 9 Ex. 218;
*Ingram* v. *Lawson*, 6 Bing. N. C. 212; *Hart* v. *Wall*, 2 C. P. D.
146; *Worthington* v. *Houghton*, 109 Mass. 481; *Steketee* v.
*Kinne*, 48 Mich. 322; *Whittemore* v. *Weiss*, 33 id. 348; *Russell* v. *Webster*, 23 W. R. 59; *Tabart* v. *Tipper*, 1 Camp. 350.)
The changes from the first edition copied by the plaintiff were
not the subject of copyright.  (Copinger on Copyright [2d ed.]
102; *Black* v. *Murray*, 3 Ser. 383; *Hedderwick* v. *Griffin*,
2 id. 383; Drone on Copyright, 147, 212, 213; 3 Scotch Session
Cas. [2d series] 383; *Black* v. *Murray*, 9 id. [3d series] 341;
*Dicks* v. *Brooks*, L. R., 15 Ch. Div. 22, 36; *Myers* v. *Callaghan*, 20 Fed. Rep. 441, 442; 128 U. S. 617; *Scribner* v.
*Stoddard*, 19 Am. L. Reg. [N. S.] 433.)   There was sufficient
evidence of malice to entitle the plaintiff to go to the jury.
(*Samuels* v. *E. M. Assn.*, 9 Hun, 288, 294; 75 N. Y. 604;
*Halsey* v. *Brotherhood*, L. R., 19 Ch. Div. 386, 389, 390;
*Carpenter* v. *Bailey*, 53 N. H. 590; *Gott* v. *Pulsifer*, 122
Mass. 235; *Gasett* v. *Gilbert*, 6 Gray, 94, 98; *Lake* v.
*Bradstreet Co.*, 22 Fed. Rep. 771–774; *Broughton* v. *Jackson*,
18 Q. B. 378, 385; *Emack* v. *Kane*, 34 Fed. Rep. 46; *Collins*
v. *Whitehead*, Id. 121; *Atkins* v. *Perrin*, 3 F. & F. 179;
*Hart* v. *Wall*, L. R., 2 C. P. Div. 146; *T. C. F. Co.* v.
*Massam*, L. R., 14 Ch. Div. 763; *Saxby* v. *Esterbrook*, 3 C.
P. Div. 339; *Grinnell* v. *Stewart*, 20 How. Pr. 478; 32 Barb.
544; 12 Abb. Pr. 220; Cooley on Torts, 183; *Foshay* v.
*Ferguson*, 2 Denio, 617; *Delagal* v. *Highley*, 3 Bing. 950;
*Seibert* v. *Price*, 5 W. & S. 438; *Stewart* v. *Sonneborn*, 98
U. S. 187, 195; *Thomas* v. *Russell*, 9 Exch. 764, 765; *Butler*
v. *Livingston*, 15 Ga. 565, 567–568; *McKown* v. *Hunter*, 30
N. Y. 625, 628; *People* v. *Stevens*, 109 id. 159, 164.)   There
was no proof that a copyright had ever been obtained in
either the earlier or the later editions of the defendant's
publications.  (*Chase* v. *Sanborn*, 6 Official Gazette, 932, 933;
*Baker* v. *Taylor*, 2 Blatch. 82; 4 Statutes at Large, 436, § 4;
U. S. R. S. § 4959.)   There is sufficient proof of actual malice.

Ogder on Libel and Slander, 276; *Warman* v. *Hine*, 1 Jurist, 820; *Smith* v. *Matthews*, 1 M. & R. 151; *Wood* v. *Hitchings*, 2 Beav. 289; *Palmer* v. *Wright*, 10 id. 234; *Roberts* v. *Myers*, 23 L. R. 396; *Chambers* v. *Smith*, 5 Fisher, 12.) Proof should have been admitted to show that Longfellow's representatives never sued the plaintiff. (*D. T. Co.* v. *McElwes*, 5 S. E. R. 907, 909.) The certificate of the librarian of congress was improperly admitted in evidence. (*Merrell* v. *Tice*, 104 U. S. 557; *Comrs.* v. *Lansing*, 45 N. Y. 19; *Parr* v. *Greenbush*, 72 id. 463.)

*Joseph H. Choate* and *William V. Rowe* for respondent. The plaintiff failed to make out any malice on the part of the defendants, or any purpose on their part of injuring the plaintiff in causing the publications and making the statements complained of. ( *Wren* v. *Weild*, L. R. [4 Q. B.] 730; *Hovey* v. *R. T. P. Co.*, 57 N. Y. 119; *C. M. Co.* v. *G. Co.*, 13 Blatch. 375; *Halsey* v. *Brotherhood*, L. R. [19 Ch. Div.] 386, 388; 15 id. 514; Odgers on L. and S. 138; *Hastings* v. *G. L. Co.*, 51 Hun, 364.) It is immaterial whether we describe and regard the present action as one, strictly speaking, for slander of title, or as an action for libel simply. In either case malice must be expressly proved. In the former case this is always true, as we have seen, and in the latter case it is true, because in this instance the publication was privileged. (*Klinck* v. *Colby*, 46 N. Y. 427; *Hamilton* v. *Eno*, 81 id. 116; *Hover* v. *R. T. P. Co.*, 57 id. 119.) Having utterly failed to prove malice, plaintiff's action falls to the ground, and cannot be supported by any possible error on the trial not affecting the proof on that point. *Dillon* v. *Anderson*, 43 N. Y. 236; *People* v. *Tribune*, 54 Mich. 457, 464; *Howard* v. *McDonough*, 77 N. Y. 592, 594; *Wilson* v. *K. C. E. R. R. Co.*, 114 id. 487, 498; *Hovey* v. *R. T. P. Co.*, 57 id. 119.)

PARKER, J. The learned trial judge held that the publication complained of was a privileged communication; that the evidence adduced did not justify a finding by the jury that the

publication was malicious, and directed a verdict in favor of the defendant.

Whether the publication was a privileged communication had an important bearing upon the question of the sufficiency of plaintiff's proof to justify a submission to the jury. The publication was *prima facie* a libel. In such a case proof of malice is not required beyond evidence of the publication itself, because the law presumes malice.

When, however, the publication is, in fact, a privileged communication, the rule is that upon the plaintiff rests the additional burden of proving the existence of express malice. (*Klinck* v. *Colby et al*, 46 N. Y. 427.) The rule is the same whether the action be regarded as one for slander of title or for libel simply. (*Hovey et al.* v. *Rubber Tip Pencil Company*, 57 N. Y. 125.) Whether the subject-matter to which the alleged libel relates, and the interest in it of defendants, are such as to render the publication privileged, and, therefore, *prima facie* excusable, is a question for the court. (*Klinck* v. *Colby et al.*, *supra*.)

When the facts upon which the defendants base their claim of privilege is challenged by the plaintiff, it then becomes the duty of the court to submit the question to the jury, under proper instructions, to determine the existence or non-existence of the facts upon which the privilege is sought to be founded.

But where, as in this case, the facts upon which the claim of a privileged communication is sought to be established are uncontradicted, upon the court rests the duty of determining, as a matter of law, whether the communication be privileged or not.

Did the court rightfully determine that question? Judge FOLGER said, in *Hamilton* v. *Eno*, that "the occasion that makes a communication privileged is when one has an interest in the matter, or a duty in respect to it, or there is a propriety in utterance, and he makes a statement in good faith to another, who has a like interest or duty, or to whom a like propriety attaches to hear the utterance." (81 N. Y. 116.)

Such an occasion is where a communication is fairly made by a person in the discharge of some public or private duty, legal or moral, or in the conduct of his own affairs, in a matter where his interest is concerned. (*White* v. *Nicholls*, 3 How. [U. S.] 266.)

In *Klinck* v. *Colby et al.* (*supra*), the defendants having been defrauded of a large amount of goods, and having probable cause to believe that plaintiff was a party to the fraud, signed a paper, in which they stated that they had been "robbed and swindled" by plaintiff and others, and agreed to bear equally the expense of prosecuting the offenders criminally. The court held, as a matter of law, that the exhibition of the paper to an agent of one of the parties defrauded, for the purpose of procuring the signature of the principal, was privileged.

In *Wren* v. *Weild* (L. R.., 4 Q. B. 730), an action of the same general character as this, the plaintiff sought to establish his case by showing the invalidity of the patent, which defendant asserted justified the publication of which plaintiff complained.

In that case BLACKBURN, J., says: "But we think that as soon as it was shown in evidence that the defendant really had a patent-right of his own and was asserting it, the occasion privileged the communication, and the plaintiffs were bound to prove such malice as would support the action."

In *Hovey* v. *Rubber Tip Pencil Co.* (*supra*), the court says: "If the defendant, believing itself to have an exclusive patent, issued such a notice in good faith as a warning to dealers, against an invasion of its rights, it, in so doing, would only have discharged a moral obligation, and satisfied the demands of fair dealing. In such a case a mistake on its part, as to the validity of its right, would not have rendered it liable to an action."

If, in an action for slander of title, the defendant produce the deed under which he made the assertion of title, the communication is privileged and the plaintiff must fail, unless he goes further and proves that the defendant knew that the

deed was worthless, and made the publication with such knowledge.

So, if an author or book publisher obtain a copyright, and thereafter asserts that the same book published by some other person is unauthorized, such publication will be held to be a privileged communication, and its privileged character can not be taken away by proof that it was not the subject of a copyright.

The actual existence of a copyright, under which the claim is made, will afford protection to the claimant until the plaintiff shall have proven that the claimant had knowledge of its invalidity, and therefore acted in bad faith. In the case before us the plaintiff proved that in the year 1882 it published cheap editions of "Hyperion" and "Outre-Mer." That immediately thereafter, the defendants published an advertisement in the Evening Post and Publishers' Weekly, charging that the plaintiff's books infringed a copyright which they claimed still existed in later editions of such works. The result of such publication greatly diminished plaintiff's sales. On the part of the defendants it appeared that they, and their predecessors, had been for a long time the publishers of the works of Mr. Longfellow, under contract with him with respect to the same, and the copyrights thereof. That at the time of the publication complained of they were publishing editions of "Hyperion" and "Outre-Mer" as revised by Mr. Longfellow, and for which a copyright had been obtained in the year 1869. That before making the publication complained of they caused an examination of the books issued by plaintiff to be made, and found them to contain words and expressions which were not in the original editions, but were in the revised editions. Words and expressions which, with others, formed the basis for Mr. Longfellow's claim for the copyright obtained. It is quite clear that such proof privileged the communication, and the learned court was right in so deciding.

The plaintiff could not destroy the privilege by proof that the copyright was improperly allowed or that the works as

revised were not the subject of copyright. The fact that the copyright actually existed, and that Mr. Longfellow and his publishers claimed exclusive rights thereunder, and asserted them, privileged the occasion, and the plaintiff thereupon became burdened with the necessity of proving express malice. This we think it failed to do. It did not attempt to prove that the defendants knew that the revision, so-called, was not the subject of a copyright, and that, therefore, their assertion of a right as against the plaintiff was made in bad faith. Or that they had any other motive than that of protecting their supposed interest and that of Mr. Longfellow. On the other hand, the defendants' positive testimony is to the effect that they believed they had a copyright, that they acted without malice, and their sole object was to protect their own rights and those of Mr. Longfellow's family.

It seems to be quite apparent from the testimony that, not only did the defendants believe in the efficacy of the copyright to protect the alterations and changes contained in the revised editions, but that the plaintiff at the time of publication entertained the same opinion.

"Hyperion" was originally published in 1839, "Outre-Mer" in 1835, so that in 1882 the terms of copyright had expired. The limit of the time, with renewal permitted, being forty-two years. Plaintiff determined to publish cheap editions of these works. It could not find a copy of the early edition of "Hyperion" in New York city.

A copy of the later edition was thereupon obtained, and the plaintiff's president sent his brother to the library of Harvard University where a copy of the edition of 1839 was preserved, with instructions to so alter the later edition as to make it an exact copy of the first.

This he attempted, but, as it subsequently appeared, not very successfully, to do. Why did the plaintiff take so much trouble in order to procure an exact copy of the early edition? But one answer is suggested by the testimony before us. For the reason that the plaintiff, as well as the defendants, believed in the existence and validity of the copyright, in so

far as the later alterations and revisions as made by
Mr. Longfellow were concerned.   Unfortunately, Mr. Lovell
did not accomplish the task assigned him with thoroughness,
and when plaintiff's edition was published it was found to
contain one hundred and eighty-three variations from the
original edition.   They had been made by Mr. Longfellow,
and constituted a part of the ground of his claim for copy-
right.   They were at once discovered by the defendants, who,
because of their relations to the subject, were privileged to
make the publication complained of.   And the plaintiff is
without redress in the absence of proof of express malice
on the part of the defendants in its publication.

The case is barren of facts justifying or permitting an
inference of express malice.

Had it been submitted to the jury with such a result, it
would have been the duty of the court to have set the verdict
aside as against the weight of evidence.

The rule is that, under such conditions, the court should
refuse to submit a case to the jury.   (*Wilds* v. *H. R. R. R.
Co.*, 24 N. Y. 433.)

There are no exceptions to the admission or rejection of
evidence which call for a reversal.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.