(20 App. Div. 264.)

## McCARTY v. LAMBLEY.

(Supreme Court, Appellate Division, Fourth Department. July 29, 1897.)

1. SLANDER—PRIVILEGED COMMUNICATIONS—PRESUMPTION OF MALICE.

The manager of a store, who was in charge of over 300 employés, having been told by two subordinates that a third employé had not only stolen certain property, but had admitted his guilt, he charged the alleged offender with theft, in the presence of third persons, and dismissed him from service. *Held*, that the words were prima facie privileged to the extent that the presumption of malice was rebutted.

2. SAME—MALICE—INSTRUCTIONS.

Defamatory words were prima facie privileged, and hence the question of express malice was of vital importance. After stating the necessity of the existence of express malice to warrant a verdict for plaintiff, if the words were privileged, the court charged that, even though the communication was not privileged, yet if it was made in good faith, in the belief that it was true, and on a lawful occasion, those circumstances might be taken into consideration in mitigaton of damages, and the court refused defendant's request to charge that, if the words were spoken in the honest belief of their truth, they were privileged, and plaintiff could not recover. *Held* error, as permitting the jury to infer that the words might have been spoken in good faith, and in an honest belief of their truth, and yet spoken maliciously.

Appeal from trial term, Onondaga county.

Action by Patrick H. McCarty against John S. A. Lambley to recover damages for slander. From a judgment for plaintiff for the sum of $250, and from an order denying a new trial, defendant appeals. Reversed.

The undisputed facts of the case, so far as it is necessary to detail them, are as follows: The defendant, at the time the alleged slanderous words were uttered, was manager for the firm of D. McCarty & Co., which firm carried on a large wholesale and retail department store in the city of Syracuse, and employed some 300 persons in the conduct of its business. The plaintiff, a young man 22 years of age, had charge of the bundle counter in this store, his duty being to receive from and deliver to the proper persons bundles of goods or other property placed in his charge. Some time prior to July 10, 1895, one John J. Colwell, who was also in the employ of McCarty & Co., having charge of the hat, hosiery, and furnishing department, took a straw hat from the hat counter. This hat was 6⅞ in size, of a peculiar shape and color, and the only one of that size, shape, and color remaining in stock. He inclosed the hat in a paper bag, wrote his name upon the bag, and sent it to the plaintiff's bundle counter, to be retained there until called for. On the 10th of July, George J. Barnard, a salesman in the store, sent a boy to the plaintiff's bundle counter for the hat. The boy did not return, but the plaintiff came to Barnard and Colwell with a book in his hand, and had a conversation with them, after which he returned with a straw hat of the same size and color as the one delivered to him by Colwell. The hat was somewhat worn and soiled, and the plaintiff admitted having worn it the night previous, and also that morning. He delivered this hat to Colwell, and it was thereupon charged up to the plaintiff. The evidence of both Colwell and Barnard is that the plaintiff admitted having taken the hat, and they both swore that they had seen him wearing it at different times. The plaintiff, however, denied having made the admissions to these persons which they testified to, and said that he found that some one had taken his hat, and left this one in its place; that he thereupon appropriated the one left, and wore it that night and the next morning; and that these were the only occasions of his wearing the hat. But, without going further into the controverted evidence, it is only necessary to add that it is conceded that Colwell and Barnard reported the matter to the defendant, and informed him that the

plaintiff had admitted to them that he had stolen the hat. The defendant thereupon sent for the plaintiff, and, in the presence and hearing of several other persons, charged him with theft, and dismissed him from service. A day or two thereafter, one James K. Mara, who was then a student in the law office of the attorneys of record for the plaintiff, went with the plaintiff to the store of McCarty & Co., and there had an interview with the defendant. Mara testified that he went at the instance of one of the plaintiff's attorneys; that he requested the defendant to allow the plaintiff to make an explanation, which request was refused; and that the defendant reiterated the charge that the plaintiff had stolen the hat. Such further facts as are deemed important will be referred to later on.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Raymond Cobb, for appellant.
Leonard T. Jones, for respondent.

ADAMS, J. The words spoken by the defendant to the plaintiff during the first interview were unquestionably slanderous per se; and, as they were spoken in the presence and hearing of third parties, they were manifestly actionable, unless they were either justifiable or privileged. The same may be said respecting the reiteration of the accusation to the witness Mara upon the subsequent occasion above referred to. A defense of justification was interposed by the defendant, and evidence was given which tended very strongly to establish that defense. It was thought, however, by the learned trial court, that there was sufficient controversy respecting it to raise an issue of fact, and this issue was duly submitted to the jury, and determined by them adversely to the defendant's contention. We must therefore regard their verdict as conclusive so far as that feature of the case is concerned. We are thus brought directly to a consideration of the question of privilege, and, in order to deal intelligently with that question, it is desirable to understand precisely the relations existing between these parties, as well as between them and their employers, and also the nature of the duties which these relations imposed upon them, or more especially upon the defendant, who obviously occupied a position of great responsibility. He was charged with the executive management of a large mercantile establishment. Subordinate to him, and subject to his control, were upward of 300 employés, for whose conduct and fidelity in the discharge of their duties he was in a measure responsible. His relation to his principals, as well as to his co-employés, was therefore highly confidential; and he would clearly have been remiss in the performance of his duty had he permitted a person whom he had reason to believe dishonest to remain in the service of the firm. The plaintiff, as has been seen, was likewise an employé of McCarty & Co., but not of the same grade as the defendant. He was in a sense subordinate to the latter, and it is not disputed that the defendant had the right to discharge him for proper cause. The circumstances of the case would seem, therefore, to bring into operation the rule that a person clothed with the authority and charged with the delicate responsibilities which rested upon this defendant may not only discharge a subordinate for

dishonesty, but he may, with assurance of immunity from liability, state the reasons for his action, although they involve a charge of criminal conduct, and that charge is made in the presence of third parties; provided, nevertheless, that in so doing he acts in good faith, and in the honest belief that the party against whom the charge is made was actually guilty of the crime charged.

Privileged communications have been defined by a text writer to "comprehend all statements made bona fide in the performance of a duty, or with a fair and reasonable purpose of protecting the interest of the person making them, or the interest of the person to whom they are made. A communication made bona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, although it contain criminatory matter, which without the privilege would be slanderous and actionable." Townsh. Sland. & L. § 209. The rule as thus stated has been frequently recognized and adopted by the courts in this state. Keane v. Sprague, 30 Alb. Law J. 283; Klinck v. Colby, 46 N. Y. 427; Byam v. Collins, 111 N. Y. 143, 19 N. E. 75; Hemmens v. Nelson, 138 N. Y. 517, 34 N. E. 342; Pendleton v. Hawkins, 11 App. Div. 602, 42 N. Y. Supp. 626. And, when applied to the undisputed facts of this case, we think it required the trial court to hold, as matter of law, that what was said by the defendant to the plaintiff during the first interview was prima facie privileged; for, as has been stated, it was conceded that the defendant had been informed by two of his subordinates that the plaintiff had not only stolen the hat, but that he had admitted his guilt. Klinck v. Colby, supra; John W. Lovell Co. v. Houghton, 116 N. Y. 520, 22 N. E. 1066. It is proper, however, that there should be no misapprehension as to the meaning of the term "privileged," as it is here used. We have already stated that the words complained of are prima facie slanderous, and that ordinarily they would be regarded as inferentially malicious. When, therefore, we speak of them as "privileged," we simply mean that the circumstances in which they were used rebut the inference which would otherwise arise from their utterance; or, in other words, that, when their privileged character is established as a matter of law, the burden is cast upon the plaintiff of establishing, as a matter of fact, the existence of express malice. Townsh. Sland. & L. § 209; Klinck v. Colby, supra; Byam v. Collins, supra; John W. Lovell Co. v. Houghton, supra. The learned trial court appears to have adopted this view in submitting the case to the jury, and, so far as this particular feature of it is concerned, his charge leaves nothing to be desired. The jury, it is true, were permitted to determine the question of privilege as one of fact, but they were instructed that, if they came to the conclusion that the words spoken were privileged, the plaintiff could recover no damages until he had proven that their utterance was accompanied by express malice. What constituted express malice was also very clearly and comprehensively stated; and it is not to be denied that there is some evidence in the case which, standing by itself, if deemed credible by the jury, may possibly have

justified them in reaching the conclusion that the defendant had taken advantage of the particular occasion in question to give utterance to an unfounded charge. It may be conceded, therefore, that not only was the question of express malice fairly in the case, but that it was also one of vital importance. It was consequently very desirable that the jury should have labored under no misapprehension as to the consequences of their deliberations.

After defining express malice, and stating to the jury the necessity of its existence in order to warrant a recovery by the plaintiff, if they found that the words uttered were privileged, the learned trial court further instructed them as follows, viz.:

"If you find that the justification has not been proved, and find that the communication was not privileged, under the rules which I have laid down, then you come to the question of mitigating circumstances. Even though the accusation may not be true, even though the communication may not be privileged, yet if you find the accusation was made in good faith, believing it to be true, made upon a lawful occasion, you will take those circumstances into consideration in mitigating the damages which the plaintiff might otherwise be entitled to recover at your hands,—take those circumstances into consideration in reducing the damages; for if he has made an honest mistake, with reasonable grounds to believe it 'to be true, made the accusation in good faith, from honest motives, from a desire to protect himself and the firm of which he is manager from theft and wrong, and from no ill will, no desire to injure the plaintiff, then, gentlemen, those circumstances are to be considered in reducing the damages which the plaintiff might otherwise be entitled to."

This portion of the charge was excepted to by the defendant's counsel, who asked the court to charge that, if the statements were made in the honest belief of their truth, the communication was privileged, and would constitute an absolute defense. This request was declined, and the defendant again duly excepted. If the views to which we have given expression correctly state the law of this controversy, the refusal of the trial court to charge in accordance with this request places the case in this somewhat anomalous situation: The words' complained of are, prima facie, privileged. They are therefore not actionable, unless accompanied by express malice in their utterance. Nevertheless, the jury were permitted to infer from the refusal of the court to charge as requested, as well as from the language quoted from the body of the charge, that they might find them to have been spoken in perfect good faith, and in the honest belief of their truth, and yet spoken maliciously. We do not see how these two propositions can possibly stand together; that is, how words can be spoken honestly and in perfect good faith, and at the same time be uttered maliciously. We conclude, therefore, that the request of the defendant's counsel was proper, and that the exception to the refusal of the court to charge in accordance therewith presents error which is fatal to the plaintiff's recovery, and which is not cured by the remaining portions of the charge, admirable as they are.

We have thus far considered the case with reference to the original accusations made to the plaintiff at the time he was discharged, and it is perhaps proper that a word or two should be said respecting their reiteration at the time the plaintiff interviewed the de-

fendant in company with the witness Mara, on the 13th of June. It is to be remembered that this interview was sought by the plaintiff for the purpose of discussing the question of his discharge; that Mara appeared in a semiprofessional capacity, and as a representative of the plaintiff's attorneys, to demand a retraction and reinstatement for his client; and that what was there said by the defendant was in reply to questions or demands made by Mara. We incline to the opinion, therefore, that the parties' relation towards each other was legally such as to bring any communications or statements made by either within the same rule to which we have already adverted (Billings v. Fairbanks, 136 Mass. 177); or, to state the matter more concisely, that the statements made to Mara were privileged, to the extent of requiring proof of express malice, in order to render them actionable. But it is not necessary to pass definitely upon this feature of the case, as we can see no escape from the consequences of the exception heretofore considered, and we therefore conclude that a new trial is rendered necessary.

Judgment and order reversed, and a new trial ordered, with costs to abide the event. All concur, except FOLLETT and WARD, JJ., not voting.