HERBERT TEICHNER, Appellant, *v.* IRWIN BELLAN, Respondent.

Fourth Department, February 5, 1959.

*Joseph A. McKinley* and *Robert J. Roulan* for appellant.

*Laurence E. Deutsch* and *Bertram Zuckerman* for respondent.

HALPERN, J. The plaintiff, a physician in Geneva, New York, sent an account against the defendant to the Credit Bureau of Geneva for collection. The Credit Bureau wrote the defendant requesting payment of the bill and, in response, the defendant sent a letter to the Credit Bureau which contained defamatory statements concerning the plaintiff. A copy of the letter is annexed to the complaint and it appears therefrom that the defendant accused the plaintiff of rendering a bill in an " outrageous " amount for " very limited " services for the defendant's wife. It also appears that the defendant accused the plaintiff of having committed an assault upon the defendant's wife by administering an injection of Salk vaccine without her permission or the permission of the defendant. The letter further asserted that, despite the plaintiff's knowledge that the defendant's wife was allergic to penicillin, he injected a vaccine

containing penicillin and as a result the defendant's wife suffered an allergic reaction. The conduct of the plaintiff was characterized in the letter as "unethical", "illegal", "despicable" and not in accordance with the standards of the American Board of Obstetrics and Gynecology. The letter also charged the plaintiff with having refused to furnish the defendant the results of certain medical tests which the defendant wished "to present to the doctor who was to continue the case" and this was characterized as "highly unprofessional".

The plaintiff sued for libel. The defendant moved to dismiss the complaint as insufficient on its face and the Special Term granted the motion.

This appeal presents three questions, which should be considered separately, although they are sometimes merged or confused in discussion: (1) Was there a publication of the letter within the meaning of the rule that, in order to be actionable, there must be a publication of the defamation to someone other than the person defamed? (2) Is the plaintiff chargeable with having consented to the publication of the defamatory statements to the Credit Bureau? (3) Was the publication to the Credit Bureau privileged?

There are decisions in some States that a communication of defamatory matter to an agent of the person defamed in response to an inquiry does not constitute a publication to a third person (*McDaniel* v. *Crescent Motors,* 249 Ala. 330; *Kirk Jewelers* v. *Bynum,* 222 Miss. 134; *Beck* v. *Oden,* 64 Ga. App. 407; *Dickinson* v. *Hathaway,* 122 La. 644; *Freeman* v. *Dayton Scale Co.,* 159 Tenn. 413; see Annotation, 172 A. L. R. 208, 209).

But the better view seems to us to be that taken in another line of cases, holding that the communication to the plaintiff's agent is a publication, even though the plaintiff's action may ultimately be defeated for other reasons. The agent is, in fact, a different entity from the principal; the communication to the agent is, in fact, a publication to a third person (*Brown* v. *Elm City Lbr. Co.,* 167 N. C. 9; *Massee* v. *Williams,* 207 F. 222; *Rudd* v. *Cameron,* 4 D. L. R. 567, appeal dismissed 8 D. L. R. 622; *Murphy* v. *Johns-Manville Products Corp.,* 45 N. J. Super. 478, petition for certification denied 25 N. J. 55; see Annotation, 172 A. L. R. 208, 212).

As the American Law Institute puts it in the Restatement of Torts: "the communication to a servant or agent of the person defamed is a publication although if such communication is in answer to a letter or a request from the other or his agent, the

publication may not be actionable '' under other rules (3 Restatement, Torts, § 577, comment *e*, p. 194).

The leading text writers have expressed the same view (Prosser, Torts [2d ed.], § 94, pp. 596–597; 1 Harper and James, Law of Torts, § 5.15, p. 393; Seelman, Law of Libel and Slander in New York, § 125, p. 117).

While there is no decision of the Court of Appeals directly in point, we may find support for this view in the case of *Ostrowe* v. *Lee* (256 N. Y. 36), holding that the dictation by the defendant to his own stenographer of a defamatory letter addressed to the plaintiff is a publication to a third person (see, also, *Kennedy* v. *Butler, Inc.*, 245 N. Y. 204). The principle of the *Ostrowe* case is necessarily inconsistent with the view that a principal and his agent are to be treated as a single person for the purpose of determining whether there was a publication of the defamation.

We, therefore, hold that the sending of the defamatory letter to the Credit Bureau, where it was read by the employees of the Bureau, constituted a publication.

The defendant relies upon *Wells* v. *Belstrat Hotel Corp.* (212 App. Div. 366) as supporting a contrary view, but it will be found upon analysis that the decision in that case turned upon a finding of consent on the part of the plaintiff to the making of the defamatory statement to his agent, rather than upon any broad proposition that publication to an agent of the person defamed is not a publication. In the *Wells* case, it appeared that the defendant's manager had slandered the plaintiff in the presence of several other persons and that the plaintiff had thereafter requested his attorney to make inquiry of the defendant as to its version of the facts in controversy. As the plaintiff might well have expected, the defendant's manager replied by letter to the attorney, repeating substantially the same defamatory statements as those which he had previously made orally. The court concluded that the defamatory letter had been '' procured '', if not indeed '' solicited '', by the plaintiff, and the cause of action for libel based upon the letter was accordingly dismissed. It thus appears that the *Wells* case bears upon the second question put above rather than upon the first, and that the court in that case merely held that under the circumstances there presented the plaintiff was chargeable with having consented to the communication of the defamatory matter to his attorney. The dictum in *Gutowska* v. *Childs Co.* (5 A D 2d 245, 249) may also be explained as presenting a question of consent rather than of publication.

Consent is a bar to a recovery for defamation under the general principle of *volenti non fit injuria* or, as it is sometimes put, the plaintiff's consent to the publication of the defamation confers an absolute immunity or an absolute privilege upon the defendant (3 Restatement, Torts, § 583; Prosser, Torts [2d ed.], § 95, subd. 4, p. 613). However, a plaintiff who had authorized an agent to make an inquiry on his behalf is not to be charged with consent to a defamatory statement made in reply to the inquiry, unless he had reason to anticipate that the response might be a defamatory one (e.g., *Wells* v. *Belstrat Hotel Corp., supra*). Only in such a case can it be said that he had impliedly agreed to assume the risk of a defamatory communication to his agent (3 Restatement, Torts, § 583, comment *d*).

In this case, so far as appears from the allegations of the complaint, the plaintiff had no reason to anticipate that the dunning letter would provoke a defamatory response and, therefore, he cannot be fairly charged, as a matter of law, with having consented to the sending of a defamatory communication to the Credit Bureau. The plaintiff had not authorized the Credit Bureau to ask the defendant for any information or to obtain from him a statement of his views as to the conduct of the plaintiff. All that the plaintiff did, so far as appears from the complaint, was to authorize the Credit Bureau to make a demand for payment of the bill. This certainly did not constitute *carte blanche* consent to the defendant's making defamatory statements concerning the plaintiff to the Credit Bureau (*Nelson* v. *Whitten*, 272 F. 135).

In our opinion, the problem in this case should be dealt with, not as one of " no publication " or of consent, but rather as one of qualified privilege. The demand for payment of the bill undoubtedly gave rise to a qualified privilege on the part of the defendant, entitling him to make a good faith response to the collection agency. The existence of a qualified privilege does not depend upon consent by the plaintiff; a privilege may exist in appropriate circumstances even though the statement was volunteered and was not made in response to any inquiry. It is generally recognized that one has a qualified privilege in making a statement for the purpose of protecting his own interests. In reply to the demand for payment, the defendant had the right to give his reasons for nonpayment and he would be protected in doing so, even though some of his statements might be defamatory, so long as he acted without malice (*Kennedy* v. *Butler, Inc.,* 245 N. Y. 204, *supra*; 1 Harper

and James, Law of Torts, § 5.17, p. 400; Odgers, Libel and Slander [6th ed.], p. 242; *Brown* v. *Elm City Lbr. Co.,* 167 N. C. 9, *supra*).

But the defendant cannot prevail upon this motion on the ground of qualified privilege. Qualified privilege is an affirmative defense to be pleaded and proved by the defendant (*Ostrowe* v. *Lee,* 256 N. Y. 36, *supra*). The protection of a qualified privilege is lost if it appears that the defendant acted maliciously for the purpose of injuring the plaintiff rather than for the purpose of protecting his own interests or that he acted without a bona fide belief in the truthfulness of the defamatory matter (*Andrews* v. *Gardiner,* 224 N. Y. 440; *Forsythe* v. *Durham,* 270 N. Y. 141; *Loewinthan* v. *Le Vine,* 299 N. Y. 372; 3 Restatement, Torts, §§ 599–601, 603). The complaint in this case alleges that the defendant acted with malice. The issue of qualified privilege must await determination upon the trial.

The distinction between a finding of "no publication" or of consent, on the one hand, and a finding of qualified privilege, on the other, is a crucial one in this case. If the communication to the collection agency were held not to be a publication or if the plaintiff were held to have consented to it, there could be no recovery, regardless of malice. On the other hand, if the sending of the letter to the agency is held to have been a publication made without the consent of the plaintiff, the plaintiff may be able to recover for the defamation, even though the circumstances are held to have given rise to a qualified privilege, if it is proved that the defendant acted with malice.

To summarize, in answer to the three questions posed at the beginning of this opinion, we hold: (1) the sending of the defamatory letter to the Credit Bureau constituted a publication; (2) it cannot be said as a matter of law upon the face of the complaint that the plaintiff had consented to the defamation, and (3) any claim of qualified privilege on the part of the defendant must be pleaded in the defendant's answer and must await determination upon the trial.

The order dismissing the complaint should be reversed and the motion to dismiss should be denied.

All concur. Present — McCURN, P. J., WILLIAMS, BASTOW, GOLDMAN and HALPERN, JJ.

Order reversed, with $10 costs and disbursements, and motion denied, with $10 costs.