**Michael MANDELBLATT, Plaintiff,**

v.

**Ronald O. PERELMAN, Howard Gittis, Bruce Slovin, Fred L. Tepperman and Frederick W. McNabb, Jr., Defendants.**

No. 86 Civ. 7829 (RLC).

United States District Court, S.D. New York.

April 5, 1988.

---

Rhoades and Rhoades, P.C., Brewster, N.Y., for plaintiff; Daniel Rhoades, of counsel.

Skadden, Arps, Slate, Meagher & Flom, New York City, for defendants; Vaughn C. Williams, of counsel.

ROBERT L. CARTER, District Judge:

## OPINION

This is one of a growing number of suits seeking to redress adverse employment action on a theory of defamation.[1] Plaintiff Michael Mandelblatt brought suit in diversity against four directors of the Revlon Group, Inc. (Revlon) and its General Counsel, alleging that they defamed him in connection with the termination of his consulting arrangement with Revlon. Defendants move for summary judgment on the ground that plaintiff consented to the publication of their allegedly defamatory statements.

## BACKGROUND

Revlon (formerly known as Pantry Pride, Inc.) came under the control of the MacAndrews & Forbes Group, Inc., on June 11, 1985. Shortly thereafter, plaintiff entered into a consulting agreement ("the Agreement") with Pantry Pride. Under the terms of the Agreement, plaintiff resigned his positions as officer and director of Pantry Pride, and of its subsidiary, Devon Stores, Inc., and, effective August 1, 1985, took on consulting responsibilities "in connection with the management, operation and possible disposition of the business of ... Devon." Williams Aff't, Ex. A, at 3.

The Agreement provided for the termination of plaintiff's services on June 11, 1986, unless sooner terminated by, among other events, plaintiff's discharge for

---

1. A sampling of recent decisions in such suits by New York's appellate courts includes *Loughry v. Lincoln First Bank, N.A.,* 67 N.Y.2d 369, 502 N.Y.S.2d 965, 494 N.E.2d 70 (1986); *Aronson v. Wiersma,* 65 N.Y.2d 592, 493 N.Y.S.2d 1006, 483 N.E.2d 1138 (1985); *Carney v. Memorial Hospital and Nursing Home,* 64 N.Y.2d 770, 485 N.Y.S.2d 984, 475 N.E.2d 451 (1985); *Handlin v. Burkhart,* 66 N.Y.2d 678, 496 N.Y.S.2d 422, 487 N.E.2d 279 (1985); *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984); *Silver v. Mohasco Corp.,* 62 N.Y.2d 741, 476 N.Y.S.2d 822, 465 N.E.2d 361 (1984); *Conley v. Gravitt,* 133 A.D.2d 966, 520 N.Y.S.2d 672 (3d Dep't 1987); *Noble v. Creative Technical Services, Inc.,* 126 A.D.2d 611, 511 N.Y.S.2d 51 (2d Dep't 1987); *Kovacs v. Xerox Corp.,* 119 A.D.2d 986, 500 N.Y.S.2d 882 (4th Dep't 1986).

cause. Cause for plaintiff's discharge was declared to arise upon

(A) the willful and continued failure by [plaintiff] to substantially provide the services to be provided by him hereunder ..., after demand for substantial performance is delivered by the Board of Directors of Pantry Pride that specifically identifies the manner in which such Board of Directors believes [plaintiff] has not substantially performed his consulting services, (B) the willful engaging by [plaintiff], in his capacity as a consultant, in gross misconduct materially injurious to Pantry Pride monetarily or otherwise or (C) the conviction of [plaintiff] for a felony under federal or state law.... [N]o act, or failure to act, on [plaintiff's] part shall be considered "willful" unless done, or omitted to be done, by him not in good faith and without reasonable belief that his action or omission was in the best interest of Pantry Pride....

Agreement, ¶ 7(d). As a matter of procedure, the Agreement stipulated that a discharge for cause should not be effective unless plaintiff first received (1) reasonable notice, (2) an opportunity to be heard, together with counsel, before the Board of Directors, and (3) a Notice of Termination, stating that "in the good faith opinion of [the] Board of Directors [plaintiff] was guilty of conduct set forth in clause (A), (B) or (C)," quoted above. *Id.* The Notice of Termination was required to "indicate the specific termination provision ... relied upon and ... set forth in reasonable detail the facts and circumstances claimed to provide a basis for termination ... under the provision so indicated." *Id.*, ¶ 7(f).

At a March 5, 1986, meeting of Pantry Pride's Board of Directors, defendant Perelman, Chairman of the Board, "requested [defendant] McNabb to report to the Board with respect to certain developments relating to [plaintiff's] performance...." Williams Aff't, Ex. B (Minutes of March 5 Meeting). The Board then unanimously resolved to authorize the appropriate corporate officers "to advise [plaintiff] that there is a reasonable basis for the Board to consider terminating him for cause as that

term is defined in the [Agreement] ...[,] and to offer him the opportunity to be heard before the Board...." *Id.* By letter dated March 6, 1986, defendant Gittis notified plaintiff of the Board's intention to consider terminating him, and gave him a week in which to advise Pantry Pride of his desire to be heard by the Board. Defendant Gittis wrote:

[m]anagement has submitted and will submit to the Board of Directors substantiation of its view that your conduct with respect to discouragement of prospective purchasers of Devon and otherwise establishes that you have willfully engaged in gross misconduct materially injurious to Pantry Pride constituting cause for your discharge pursuant to the provisions of Section 7(d)(B) of the Agreement.

Williams Aff't, Ex. C.

Plaintiff's attorney requested an opportunity to be heard, and defendant McNabb confirmed, by letter dated May 15, 1986, that the Board would hear plaintiff at its May 20 meeting. Defendant McNabb indicated in that letter that

the Company's evidence will show that in conversations with [defendant] Slovin, President of MacAndrews & Forbes, its legal counsel, and with at least three prospective purchasers of Devon Stores, [plaintiff] demonstrated a clear design to interfere, and in fact interfered, with Pantry Pride's efforts to sell Devon Stores.

Williams Aff't, Ex. E. At the May 20 meeting, plaintiff was presented with "the Company's evidence," which included five affidavits. Williams Aff't, Ex. F. In one of those affidavits, defendant Slovin swore that

[plaintiff] approached [defendant] Perelman, Chairman of the Board for Pantry Pride Inc. and sought a lucrative, long-term employment contract for himself. I was told by Mr. Perelman that he told [plaintiff] to work it out with me. [Plaintiff] told me in or around January, 1986 that he was looking for a three year agreement for himself escalating from $300,000 to $400,000 per year with large

additional incentives if Devon was sold.... I was opposed to [a] long-term [extension of the Agreement] because over the course of the several months immediately preceding these discussions, [plaintiff] told me on numerous occasions that he didn't like his job and that he thought Devon was an inferior company.... [When I declined to offer him a long-term extension, [plaintiff] told me that unless I gave into [sic] his demands he would have no enthusiasm in managing the business and would not actively assist in its sale throughout the remainder of our Agreement's term. I considered this to be a breach of our Agreement and told [plaintiff] that I thought his threats were inappropriate for a person in his position....

Slovin Aff't, ¶ 8. Defendant Slovin went on to report two occasions on which plaintiff had allegedly discouraged potential purchasers of Devon, *id.*, ¶¶ 9–11, and concluded by stating that "I am convinced that [plaintiff] acted in bad faith and with the avowed purpose of sabotaging the sale of Devon." *Id.*, ¶ 13.

At the conclusion of the May 20 Board meeting, it was resolved as follows:

[T]hat in the good faith opinion of the Board of Directors ..., [plaintiff] has violated clause B of Subsection 7(d) of the Consulting Agreement ... by reason of his threats to fail to perform his duties under the Agreement unless he were awarded a new and more lucrative contract coupled with his demonstrated lack of cooperation with and discouragement of prospective purchasers of Devon Stores, Inc. following the Corporation's refusal to accede to his improper demands.

[T]hat the Board of Directors finds that the misconduct of [plaintiff] described in the foregoing resolution was willful in that it was not engaged in by him in good faith and with a reasonable belief that his actions and omissions were in the best interests of the Corporation and further that such misconduct was "materially injurious" to the Corporation in that it impeded corporate efforts to sell Devon Stores, Inc.

Williams Aff't, Ex. M at 10 (Minutes of May 20 Meeting). This language was repeated essentially verbatim in the Notice of Termination sent to plaintiff on May 20 over the signature of defendant McNabb.

## DISCUSSION

While plaintiff contends that his discharge was unjust, his complaint sounds in tort, not contract. He alleges that

[a]mong other things, each defendant caused breach of the agreement with [plaintiff], sought to terminate his services, and told third parties, or caused third parties to be told, orally or in writing or both, that [plaintiff] was discharged "for cause," and his services were terminated because he was guilty of willful misconduct.

Defendants did this or caused it to be done by, among other things, adopting and approving directors' minutes, writing or causing to be written, one or more letters or affidavits or both, and causing publication of all thereof to third parties.

Complaint, ¶¶ 14–15. He seeks to recover for injury to "his reputation, his income, and his ability to obtain the kind of employment he had previously." *Id.*, ¶ 19. While plaintiff's language is far from precise, the court must construe it "so ... as to do substantial justice." Rule 8(f), F.R.Civ.P. *See FRA S.p.A. v. Surg–O–Flex of America, Inc.*, 415 F.Supp. 421, 424 (S.D.N.Y. 1976) (Tenney, J.) ("The principle of liberal construction of pleadings embodies the Federal Rules' fundamental design to preserve the substance of an action from failing because of irregularities and peccadilloes in form").

A strict reading of the complaint might lead one to suppose that its scope is limited to claims based on defamatory statements made *subsequent* to plaintiff's termination, but it admits of a more generous construction: namely that "each defendant ... sought to terminate [plaintiff's] services" by publishing defamatory statements about him to the Board of Directors *prior* to his discharge. The court must hesitate to read between the lines of a plaintiff's pleading where to do so would result in prejudice to

the defendant. Here, however, defendants had full notice of the extent of plaintiff's claims at least as early as plaintiff's deposition, when plaintiff explained that he was relying on defendants' pre-discharge statements to the Board, including the affidavit Slovin presented at the May 20 Board meeting. Williams Aff't, Ex. K, at 41, 61–63 & 91–92. Indeed, defendants expressly argue that privilege attaches to *all* statements made in connection with plaintiff's termination, and not merely to those published subsequent thereto. Defendants' Reply Br., at 2. "[O]nce the defendant has sufficient notice of the nature of the communications complained of it is the function of the jury rather than of rigidly applied pleading rules to ascribe weight to the inexactness of such complaints." *Pirre v. Printing Developments, Inc.,* 432 F.Supp. 840, 843 (S.D.N.Y.1977) (Knapp, J.).

Thus understood, the statements complained of fall under four heads: first, those statements whose publication was contemplated by the Agreement's termination mechanism; second, all other statements made prior to plaintiff's discharge; third, defendants' statements subsequent to the discharge; and fourth, those statements published subsequent to discharge for whose publication plaintiff alone was responsible. Under the first head fall three specific communications, to wit, the letter of March 6, 1986, constituting "reasonable notice" within the meaning of paragraph 7(d) of the Agreement; statements made in the course of plaintiff's hearing before the Board; and the letter of May 20, 1986, constituting a "Notice of Termination" under paragraphs 7(d) and (f).

Consent to the publication of defamatory matter bars recovery for defamation. *Teichner v. Bellan,* 7 A.D.2d 247, 181 N.Y.S.2d 842, 846 (4th Dep't 1959) (citing Restatement of Torts, § 583); Restatement (Second) of Torts, § 583, Comment f (1977); *see Thompson v. Maimonides Medical Center,* 86 A.D.2d 867, 447 N.Y.S.2d 308, 310 (2d Dep't 1982). While it is customary to group the consent defense together with the "absolute privileges," an important distinction between the two must be observed. "Communications afforded an absolute

privilege are perhaps more appropriately thought of as cloaked with an immunity ..., which protects communications irrespective of the communicant's motives ...," *Toker v. Pollak,* 44 N.Y.2d 211, 219, 405 N.Y.S.2d 1, 4, 376 N.E.2d 163, 166 (1978), while recovery is barred by consent only to the extent that the communication sued upon falls within the scope of the consent. Restatement (Second) of Torts, § 583, Comment d. The Restatement makes this point as follows:

> If the person to whom the consent is given reasonably interprets the language used ... as a consent to the publication of the defamatory matter to *any person,* at *any time,* in *any manner* and for *any purpose,* the publication however made is privileged.

*Id.* (emphasis added). On the other hand, a plaintiff who consents to the publication of a statement is not barred from recovery if "he had [no] reason to anticipate that the response might be a defamatory one." *Teichner,* 7 A.D.2d at 251, 181 N.Y.S.2d at 846 (citing *Wells v. Belstrat Hotel Corp.,* 212 App.Div. 366, 208 N.Y.S. 625 (1925)). Moreover, "one who agrees to submit his conduct to investigation knowing that its results will be published, consents to the publication of the *honest* findings of the investigators." Restatement (Second) of Torts, § 583, Comment d (emphasis added). Finally, the scope of the consent, if ambiguous, is for the jury to determine. *Carlson v. Hillman Periodicals, Inc.,* 3 A.D.2d 987, 163 N.Y.S.2d 21, 22 (1st Dep't 1957) (reversing trial court's ruling that scope of consent cannot, as a matter of law, embrace consent to defame). In sum, while the defense of absolute privilege necessarily survives proof of malice, the defense of consent, depending upon its scope, may or may not succumb to such proof.

■ It is clear that the statements contained in the Notice of Termination fall within the scope of plaintiff's consent as manifested in the Agreement. Plaintiff bargained for the right to receive such a Notice, and specifically one which "set forth in reasonable detail the facts and circumstances claimed to provide a basis

for termination...." Agreement, ¶ 7(f). He had every reason to expect that the Notice would contain "unfavorable views." 2 Harper, James & Gray, The Law of Torts, § 5.17, at 138 (2d ed. 1986); *see* Restatement (Second) of Torts, § 583, Comment d & Illus. 2.

Similarly, defendant Gittis did no more than provide "reasonable notice" to plaintiff, as contemplated by the Agreement, when he informed him, in the letter of March 6, 1986, of management's view that he engaged in specified misconduct. Insofar, then, as the letters of March 6 and May 20 were published only to "persons with[ ] a legitimate job-related interest in receiving" them, no claim for defamation may properly be predicated upon either. *Joftes v. Kaufman*, 324 F.Supp. 660, 664 (D.D.C.1971) (notices of dismissal for cause contemplated by collective bargaining agreement not actionable where published only to legitimately interested persons).

■ The application of the consent defense to statements made in the course of plaintiff's hearing before the Board presents a closer question. That question is whether plaintiff's agreement to, and invocation of, the hearing process amounted to his consent to the communication of only the *honestly held* views of defendants at the Board meeting, *see* Restatement (Second) of Torts, § 583, Comment d, or whether that consent extended to the publication of statements to the Board in bad faith. Defendants rely upon *Hollowell v. Career Decisions, Inc.*, 100 Mich.App. 561, 298 N.W.2d 915 (1980). In holding that the defendant's criticism of the plaintiff, subsequent to plaintiff's discharge, at a meeting of the board of directors convened at plaintiff's request, was not actionable defamation, the *Hollowell* court had resort to a theory of *qualified* privilege coupled with a finding of an absence of malice. 298 N.W.2d at 922. In an alternative holding,[2] the court reasoned that an absolute privilege attached to the defendant's statements

since "[t]here was no statement made at the board meeting ... that did not relate to [plaintiff's] employment." *Id.*

Whether or not the *Hollowell* court correctly pronounced the law of Michigan, its reasoning does not square with the New York authorities. Under New York law, as in the Restatement, a communication may exceed the scope of the consent in any number of ways, and not simply by going beyond the subject matter to which consent was given. *E.g., Teichner v. Bellan, supra; Burton v. Crowell Pub. Co.,* 82 F.2d 154 (2d Cir.1936) (L. Hand, J.) (plaintiff's consent to use of photographs for which he had posed was no defense to defamation action based on publication of distorted photo not previously shown to him); *Nelson v. Whitten,* 272 F. 135 (E.D.N.Y.1921) (plaintiff's request that former employer write letter of recommendation "did not invite the defendant to make public anything false and defamatory").

Here, the Agreement states that no discharge of plaintiff should take effect unless plaintiff had first been afforded an opportunity to be heard by the Board, after which it was the Board's *"good faith* opinion ... [that plaintiff] was guilty of conduct" constituting cause for discharge. Agreement, ¶ 7(d) (emphasis added). Plaintiff's consent clearly extended only to hearing procedures conducted in good faith. He must therefore be given the opportunity to prove to the jury that statements published to the Board at its May 20 meeting, including the affidavit of defendant Slovin,[3] were made in bad faith.

■ The second category of statements sued upon are those made prior to plaintiff's discharge which were not specifically contemplated by the Agreement's termination procedures. Plaintiff alleges that one or more defendants (e.g., defendant McNabb, by his statements regarding plaintiff at the Board meeting of March 5, 1986) defamed him to the Board, causing the Board to first consider terminating his

---

**2.** The alternative holding is, properly speaking, only dicta, since the court expressly found insufficient evidence of malice.

**3.** Plaintiff's allegations that defendants Tepperman and McNabb "supported the affidavits," Mandelblatt Depo. at 61–63, are also subject to proof of bad faith.

employment for cause. Defendants argue, however, that plaintiff's consent to the termination procedures prescribed by the Agreement extended as well to the intra-mural publication of defamatory communications "about any *potential* termination for cause." Reply Br. at 8 (emphasis added).

It is beyond dispute that an employer's agents must be free, within certain bounds, to communicate with it regarding the performance of persons in its employ. This freedom, however, arises not under the rubric of consent, but under that of qualified privilege. A qualified privilege attaches to a communication which " 'is fairly made by a person in the discharge of some public or private duty, legal or moral, or in the conduct of his own affairs, in a matter where his interest is concerned.' " *Toker,* 44 N.Y.2d at 219, 405 N.Y.S.2d at 5, 376 N.E.2d at 166–67 (quoting *Lovell Co. v. Houghton,* 116 N.Y. 520, 526, 22 N.E. 1066 (1889)). Where such a privilege attaches, liability is avoided only to the extent that the communication is "expressed 'in a reasonable manner and for a proper purpose.' " *Id.* (quoting Prosser, Torts, § 115 (4th ed. 1971)). Proof that the communication subject to a qualified privilege was actuated by an "indirect motive," *Toker,* 44 N.Y.2d at 221, 405 N.Y.S.2d at 6, that is, one other than a sense of duty, 2 Harper, James & Gray, The Law of Torts, § 5.27, at 234 (2d ed. 1986), is sufficient to defeat the privilege.

A communication by an employee to his employer regarding a matter in the employer's interest enjoys a qualified privilege. *Lewis v. Chapman,* 16 N.Y. 369, 373–75 (1857); *Graney Development Corp. v. Taksen,* 66 A.D.2d 1008, 411 N.Y.S.2d 756 (4th Dep't 1978). Invocation of the privilege serves to "negate any presumption of implied malice flowing from a defamatory

statement, and places the burden of proof on this issue upon the plaintiff." *Toker,* 44 N.Y.2d at 219, 405 N.Y.S.2d at 5, 376 N.E. 2d at 166. Pre-trial dismissal of plaintiff's claims arising out of statements prior to his discharge is therefore inappropriate, and plaintiff must be afforded an opportunity to discover evidence going to defendants' motives in making such statements.[4] Rule 56(f), F.R.Civ.P.

The third class of statements before the court entails those that defendants allegedly published upon, or subsequent to, plaintiff's discharge; the gist of these statements (as well as of those in the fourth category) is said to inhere in the claim that "plaintiff was discharged for cause" or "plaintiff was guilty of willful misconduct." Complaint, ¶ 14. A defamation claim predicated on the statement that the plaintiff was discharged "for cause" is sufficiently ambiguous, as a matter of law, to state a claim for the jury. *Carney v. Memorial Hospital and Nursing Home,* 64 N.Y.2d 770, 772, 485 N.Y.S. 2d 984, 985–86, 475 N.E.2d 451, 452–53 (1985). Taking plaintiff's evidence as true on this motion for summary judgment, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986), the facts show that one Gary Appel, an employee of an investment banking firm retained by Revlon in connection with its attempt to divest itself of Devon Stores, was told that plaintiff was discharged for cause. Mandelblatt Depo. at 12–13. While it is true that plaintiff has come forward with no evidence on the element of publication, *see Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), the burden of coming forward with such proof did not shift to him, in the absence of a *prima facie* showing by the moving parties that they did not publish the statement to Mr. Appel.[5] Rule 56(e),

---

**4.** By memorandum endorsement dated July 17, 1987, the court stayed certain third-party depositions pending its determination of this motion. That stay is now lifted.

**5.** When asked whether he had spoken to anyone outside of Revlon about plaintiff's discharge, defendant Slovin answered "[n]ot to my knowledge." Slovin Depo. at 93. Defendant Gittis

had "no recollection of whether [he] did or did not have conversations with anybody else." Gittis Depo. at 33. Defendant McNabb did "not believe [he] ha[d] spoken to anyone, other than the directors of the company." McNabb Depo. at 127. Only defendant Tepperman unequivocally denied having communicated with outsid-

F.R.Civ.P.; *Celotex,* 106 S.Ct. at 2553. *Cf. Green v. Irwin,* 28 A.D.2d 971, 283 N.Y.S. 2d 455, 456 (1st Dep't 1967) (burden shifted where defendant "denie[d] unequivocally that he said the words").

In the last category of statements, plaintiff seeks to hold one or more ·defendants liable, under the doctrine of "self-publication," for plaintiff's own republication to one Peter Kindler, a job-search consultant, of the statement that he was discharged for cause. Although no New York court has had occasion to adopt the self-publication doctrine, it is the law in a growing minority of American jurisdictions. *E.g., Lewis v. Equitable Life Assurance Society,* 389 N.W.2d 876, 886–88 (Minn. 1986); *McKinney v. County of Santa Clara,* 110 Cal.App.3d 787, 168 Cal.Rptr. 89, 93–94 (1st Dist.1980); *First State Bank of Corpus Christi v. Ake,* 606 S.W.2d 696, 701–02 (Tex.Civ.App.1980); *Grist v. Upjohn Co.,* 16 Mich.App. 452, 168 N.W.2d 389, 406 (1969); *Colonial Stores v. Barrett,* 73 Ga.App. 839, 38 S.E.2d 306, 308 (1946). The doctrine, a narrow exception to the rule that the originator of a defamatory statement is not responsible for the defamed person's voluntary disclosure of that statement to a third party, *Church of Scientology of Calif., Inc. v. Green,* 354 F.Supp. 800, 804 (S.D.N.Y.1973) (Leval, J.); *see* Restatement (Second) Torts, § 577(1), holds the defendant liable for plaintiff's own republication of defamatory matter if he "was in some way compelled to communicate the defamatory statement to a third person, and if it was foreseeable to the defendant that the defamed person would be so compelled. . . ." *Lewis,* 389 N.W.2d at 886. The Minnesota court reasoned that the element of "significant" compulsion was necessary lest the plaintiff's duty to mitigate damages be undermined. *Id.,* 389 N.W.2d at 888; *see also McKinney,* 110 Cal.App.3d at 797–98, 168 Cal.Rptr. at 94 ("strong compulsion").

The Restatement espouses a less generous view:

One who communicates defamatory matter directly to the defamed person, who himself communicates it to a third person, has not published the matter to the third person if there are no other circumstances. If the defamed person's transmission of the communication to the third person was made, however, *without an awareness of the defamatory nature of the matter* and if the circumstances indicated that communication to a third party would be likely, a publication may properly be held to have occurred.

Restatement (Second) of Torts, § 577, Comment m (emphasis added); *see id.,* Illus. 10, 11.

The court need not here decide which version, if any, of the doctrine accords with New York law, for plaintiff has come forward with no evidence from which one could infer either "significant compulsion" or an "unawareness of the defamatory nature of the matter." Although plaintiff states in conclusory manner that in the course of seeking new employment he "finally had no choice but to tell about the alleged termination 'for cause'," Mandelblatt Aff't, ¶ 27, a memorandum which he prepared contemporaneously with his job search indicates that he "made no mention [to Kindler] of [his] termination for cause or of Revlon's accusations concerning my behavior," but mentioned only that he was in the process of suing Revlon. Williams Aff't, Ex. N, at 2. At his deposition, moreover, he testified that "I felt it incumbent upon myself to inform [Kindler] that I had instituted this action and that we are challenging Revlon's allegations of termination for cause." Mandelblatt Depo. at 26. If this testimony permits an inference of a self-publication at all, it certainly does not permit an inference of a "strongly compelled" self-publication.

## CONCLUSION

Defendants' motion for summary judgment is granted in part and denied in part. Insofar as plaintiff's complaint is premised upon publication of the March 6 and May 20, 1986, letters to legitimately interested

ers. Tepperman Depo. at 41. Defendant Perel-

man's testimony is not of record on this motion.

persons, and upon plaintiff's own alleged self-publication to Kindler, it is dismissed. To the extent, however, that plaintiff relies upon other statements that defendants published to the Board of Directors, whether at the Board meetings of March 5 and May 20, 1986, or at other times prior to plaintiff's discharge, upon publication of the March 6 and May 20 letters to persons not legitimately interested in their contents, and upon statements that defendants may have published to Gary Appel, defendants' motion is denied. Plaintiff shall proceed with discovery on the issues of the nature of defamatory statements defendants may have published to members of the Board and to Mr. Appel, and of defendants' motives in making such publications as the court has declared to enjoy qualified privilege. As stipulated by the parties, such discovery shall be completed within a sixty-day period, terminating on June 4, 1988. Stip. of Sept. 14, 1987. A joint pre-trial order, confined to the issues as narrowed herein, shall then be submitted on or before June 18, 1988.

IT IS SO ORDERED.