■ DIANE HIRSCHFELD, Appellant-Respondent, v INSTITUTIONAL INVESTOR, INC., et al., Respondents-Appellants. [688 NYS2d 31] —Order, Supreme Court, New York County (Leland DeGrasse, J.), entered May 15, 1997, which granted defendants' motion for summary judgment dismissing plaintiff's first cause of action alleging age discrimination, dismissed the complaint as against defendants Capital Cities/ABC, Inc., and Leonard K. Herman, and denied defendants' motion for summary judgment dismissing plaintiff's second and third causes of action, alleging defamation and seeking severance pay, respectively, unanimously modified, on the law, to the extent of granting defendants' motion for summary judgment dismissing the second and third causes of action and otherwise affirmed, without costs or disbursements.

The IAS Court properly determined that plaintiff's evidence failed to create any issue of fact concerning pretext or discriminatory motive (*see, Ferrante v American Lung Assn.,* 90 NY2d 623), since plaintiff could not meet her burden on the motion by simply refuting the employer's articulated nondis-

criminatory reasons for terminating her (*see, Ioele v Alden Press*, 145 AD2d 29), and plaintiff's professed evidence of discrimination lacked probative value (*see, Weiner v Cataldo, Waters & Griffith Architects*, 200 AD2d 942).

Likewise, the IAS Court properly dismissed the complaint as to defendants Leonard K. Herman and Capital Cities/ABC, Inc., since plaintiff failed to demonstrate that they had control over her as an employee or were involved in the decision to terminate her (*see, Patrowich v Chemical Bank*, 63 NY2d 541, 543).

Additionally, defendants Institutional Investor, Inc., Peter A. Derow and Jeffrey L. MacDonald should have been granted summary judgment dismissing plaintiff's second cause of action alleging defamation. Plaintiff sent a letter to MacDonald requesting that he provide her a written statement of the reason for her termination, which she admits had been previously communicated to her orally. Thus, plaintiff consented to publication, and such consent has been held to bar a defamation claim in New York (*see, Teichner v Bellan*, 7 AD2d 247; *see also, Mandelblatt v Perelman*, 683 F Supp 379, 383).

Further, even assuming arguendo that plaintiff did not consent to publication of the allegedly defamatory statement in the March 2 letter, New York recognizes a qualified privilege for such intracompany communications in the absence of specific proof of malice. The letter herein was one which Mac-Donald, the Chief Financial Officer for Institutional Investor, had a bona fide and legitimate interest in preparing. He had prepared it, in fact, in response to a direct written request from plaintiff that he provide a writing setting forth the reason for her discharge. His secretary had a corresponding duty to type and mail that letter to plaintiff. Thus, the communication falls within the New York qualified privilege protection (*see, Misek-Falkoff v Keller*, 153 AD2d 841).

The third cause of action, alleging breach of defendant Institutional Investor's severance policy, should also have been dismissed. Initially, plaintiff did not present any evidence of detrimental reliance on Institutional Investor's severance policy. Such absence of actual proof of reliance on a regular practice of severance payments constitutes sufficient grounds of the dismissal for a claim for severance pay (*see, Gallagher v Ashland Oil*, 183 AD2d 1033, *lv denied* 80 NY2d 758). Further, the Second Circuit has recently held that when a severance plan is covered by the Employee Retirement Income Security Act of 1974, as amended (ERISA), a common-law breach of contract claim based on the severance plan is pre-empted by

this overriding Federal statute and must be dismissed (*Tischmann v ITT/Sheraton Co.*, 45 F3d 561, 565). Concur— Sullivan, J. P., Nardelli, Lerner and Rubin, JJ.

**3** In the Matter of ERIC STRAKER et al., Respondents, v RUDOLPH W. GIULIANI et al., Appellants. [687 NYS2d 373] —Order and judgment (one paper), Supreme Court, New York County (David Saxe, J.), entered January 22, 1998, which, *inter alia*, granted the motion of petitioners pursuant to CPLR 4403 conforming the Referee's report and directed that each of the petitioners be designated as a "Detective Third Grade" with the New York City Police Department retroactive to the date each completed 18 months of investigative service, unanimously reversed, on the law, without costs and disbursements, the directives in said judgment vacated, and the matter remanded for a hearing on the issue of whether Special Operations Squad members performed investigative duties similar in scope and duration to those Transit Career Path officers who did receive appointment to Detective Third Grade.

The petitioners are former members of the Special Operations Squad (SOS) of the Transit Police Department. As of the date of the merger of the Transit Authority Police Department with the New York City Police Department on April 2, 1995, 17 of the petitioners had served in that squad for more than 18 months and 13 for fewer than 18 months. Petitioners assert that as a result of the merger with the New York City Police Department, they have the right pursuant to Administrative Code of the City of New York § 14-103 (b) (2) to be appointed detectives. That section of the Administrative Code provides, as relevant, that: "Any person who has received permanent appointment as a police officer and is temporarily assigned to perform the duties of a detective shall, whenever such assignment exceeds eighteen months in duration, be appointed as a detective and receive the compensation ordinarily paid to a detective performing such duties."

The IAS Court found that the intent of all the parties was to treat Transit officers on a parity with New York Police Department officers so that if petitioners' SOS positions "actually consisted of 'detective duties' or 'investigative duties,' the challenged determination must be set aside as arbitrary or capricious."

At the outset, we agree with the IAS Court that there was ample evidence that SOS members performed at least *some* detective functions. Thus, the evidence at the hearing before the Referee established that SOS members performed some investigative work during the night hours after a robbery, but

that an SOS member surrendered responsibility for the case in the morning when the assigned detective arrived at work, and then worked closely with the detective during the investigation, and that SOS was primarily a decoy unit.

However, the issue remains whether the investigative duties performed by SOS members was such that the Police Commissioner acted arbitrarily in not granting them detective status, while affording such status to officers in the Terrorist Task Force, the Internal Affairs Division, the Civilian Complaint Unit, and the Applicant Investigations Unit. The City's answer conclusorily asserts that officers in those divisions "were performing investigative duties * * * comparable to units in the NYPD investigative track." However, there is little in the record to determine whether this was a rational conclusion or to ascertain whether the SOS members performed investigative work *on a par* with members of these units. It is understandable that this was not addressed by the Referee since the scope of his inquiry was "whether the petitioners' work with the TAPD Career Path Programs SOS involved investigative duties." Thus, a remand is necessary for a hearing on whether the investigative duties performed by SOS members was similar in scope and duration to those performed by other officers in the Career Path Program who *did* receive promotion to detective status. Thus, although the respondent Police Commissioner had a rational basis to deny petitioners' detective status based on the hearing testimony if the only issue were whether the SOS officers performed work similar to the street decoy unit, the appropriate test of rationality herein is whether the SOS officers performed detective and investigative work comparable to that performed by the Transit officers who *did* receive detective status after the merger. Since the record before us is not sufficient to address this issue, a remand for a hearing is necessary.

We have examined the remaining contentions of respondents-appellants and find them to be without merit. Concur—Sullivan, J. P., Nardelli, Williams and Mazzarelli, JJ.