Trieger v Montefiore Med. Ctr. (2004 NY Slip Op 50350(U))

[*1]

Trieger v Montefiore Med. Ctr.

2004 NY Slip Op 50350(U)

Decided on March 9, 2004

Supreme Court, Bronx County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 9, 2004

Supreme Court, Bronx County
 NORMAN TRIEGER, D.M.D., M.D., Plaintiff,
against
MONTEFIORE MEDICAL CENTER, Defendant.
Index No. 28565/01

NELSON ROMAN, J.
By notice of motion dated May 29, 2003, defendant, Montefiore Medical Center ("Montefiore"), seeks summary judgment and dismissal of plaintiff's, Norman Trieger, D.M.D., M.D. ("Trieger"), breach of contract and age discrimination complaint.[FN1] And by notice of motion dated June 27, 2003, plaintiff seeks an order granting the instant action a trial preference. Pursuant to this court's order dated August 15, 2003, plaintiff's motion was held in abeyance pending defendant's summary judgment motion.
According to the undisputed facts, in the summer of 2001, Dr. Norman Trieger was 72 years old and had served as Chairman of the Montefiore Medical Center's Dental Department for over 30 years. On November 6, 2001, Dr. Trieger and Montefiore Medical Center entered into a written agreement whereby Dr. Trieger would continue to serve as Chair through June 30, 2002. At that point Dr. Trieger would step down as Chair, but remain a full time employee performing clinical and teaching functions with the title of Chairman Emeritus. On December 10, 2001, Dr. Trieger wrote and circulated a memorandum to the other departmental chairs, which reads in part as follows:

"the role of Chairman has eroded over the past decade, largely through autocratic, unilateral decision-making and administrative micro-management. Chairmen no longer recruit faculty to their staff. Senior administration writes a contract which details in legalistic terminology what the boundaries will be, often without any provision for academic pursuits or even a phrase of welcome and encouragement. The Administration insists that all revenues belong to Montefiore including honoraria paid for continuing medical education teaching. Monies received for Graduate Medical Education from federal and state sources which are meant to pay for teaching support for house staff education are usually absent from teaching budgets. The crisis of failure to replace [*2]essential capital equipment has managed to impair our efficiency of operation and have us drift further down the spiral of deficit. We seem to have entered onto the stage of a non-reversible Greek tragedy. We have to deal with hiring freezes which further compromise our productivity. To my knowledge chairmen and attending staff have not received a cost of living increase in salary in nine years! How can you retain good faculty?
Several chairmen have complained that their chairman's fund which now pays for many of the special benefits for meetings, travel, subscriptions and speakers based on private practice income is being further depleted by the new method of expense-reduction budgeting in a more major way . . . I believe it needs to shift gears and begin to rely more on the brilliance of its senior faculty, both for academic and business acumen. . . This is the time to try to set things right and reclaim the prerogatives and responsibilities of the office of the chairman. I hope meetings will be arranged to consider and reclaim important initiatives by the chairmen."
By letter dated December 14, 2001, Montefiore notified Dr. Trieger that the contents of his memo "is insubordinate, contrary to the best interest of [Montefiore] and a violation of [his] obligations as a member of the senior management of the medical center," and terminated his employment. Dr. Trieger then commenced the instant lawsuit seeking to enjoin Montefiore from carrying out the termination, and money damages for wrongful termination based upon age discrimination and breach of contract. By order dated February 22, 2002, Dr. Trieger's application for a temporary restraining order was denied. According to the decision and order, Dr. Trieger had not demonstrated a clear likelihood of ultimate success on the merits or irreparable harm, and a balancing of the equities would seem to favor Montefiore.
Summary Judgment
The standard for a summary judgment motion is well established, and the moving party bears the initial burden of identifying the matter that it believes demonstrates the absence of a genuine issue of material fact. (Sillman v. Twentieth Century Fox, 3 N.Y.2d 395, 165 N.Y.S.2d 498 [1957].) If the moving party meets its burden, then it is incumbent upon the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial. (Esteve v. Abad, 271 A.D. 725, 68 N.Y.S.2d 322 [1st Dept. 1947].) The nonmoving party must produce evidence in the record and may not rely simply on conclusory statements or on contentions that the affidavit supporting the motion are not credible. (Fierro v. Mauro, 104 Misc.2d 419, 428 N.Y.S.2d 555 [Sup. Ct. N.Y. Cty. 1980].) In most instances, the use of affidavits, depositions and written admissions are the primary sources of proof in a summary judgment motion.
Breach of Contract
It is a well settled rule in this state that an employment contract for a definite stated term can only be terminated for just cause. (Crane v. Perfect Film, 38 A.D.2d 289, 329 N.Y.S.2d 32 [1st Dept. 1972].) It is also well settled that insubordination justifies the rescission of a contract of service and a peremptory dismissal of the employee, with substantial deference given to an [*3]employer when such cause exists. (Speiden v. Innis, 216 A.D. 408, 215 N.Y.S. 515 [1st Dept. 1926]; Golden v. Worldvision, 133 A.D.2d 50, 519 N.Y.S.2d 1 [1st Dept. 1987].) This is especially true where high-level managers are concerned and where the efficient running of an enterprise demands a high degree of trust and cooperation among top personnel. (Golden v. Worldvision, 133 A.D.2d 50, supra.) According to Golden, upper echelon employees should perhaps have to overcome a higher hurdle to show that their discharge was abusive or retaliatory.
According to Dr. Trieger, insubordination has a clear definition, it means disobedience. Dr. Trieger argues that the memo cannot be characterized as insubordination, and Montefiore can point to no rule, regulation, order, request or policy that was violated or disobeyed by the circulation of the memo. However, this attempt to narrowly construe insubordination, which is made without legal precedent or evidence, is speculative and conclusory. A review of the relevant case law reveals that insubordination encompasses a varying degree of conduct. (Speiden v. Innis, 216 A.D. 408, 215 N.Y.S. 515 [1st Dept. 1926] (employee was rude to customers, wrote insubordinate letters, and made disparaging remarks towards company president); DeMay v. Miller, 262 A.D.2d 184, 692 N.Y.S.2d 331 [1st Dept. 1999] (employee denied responsibility and called employer a liar); Schnabel v. Abramson, 232 F.3d 83 [2d Cir. 2000] (employee had "fundamental disdain" for clients, "difficulty in following instructions" and poor judgment); Thermidor v. Beth Israel, 683 F.Supp. 403 [S.D.N.Y. 1988] (conflicts with persons in authority constitute legitimate nondiscriminatory reason).) Moreover, policy number VII-1 of Montefiore's Rules and Regulations specifically provides that employees may be discharged for insubordination.
In the instant proceeding, Dr. Trieger used his memo to publicly criticize his employer. He accused the Montefiore administration of eroding the Chairman's role through "autocratic, unilateral decision-making and administrative micro-management" and that the administration's "crisis of failure" has "impair[ed] [the medical center's] efficiency of operation and have us drift further down the spiral of deficit." The memo also accused the administration of causing the medical center "to have entered into the stage of a non-reversible Greek tragedy," and urged his colleagues to "reclaim [their] perogatives and responsibilites." This court finds that the memo is clearly insubordinate on its face, and no rational jury could find that such a memo, written by a senior member of management and circulated to other department chairs, did not provide just cause for Dr. Trieger's termination. Therefore, as Montefiore had just cause to terminate Dr. Trieger.
Employment Discrimination
Whether discrimination has occurred most often presents issues of fact, due to the often devious and subtle nature of discrimination. (Forrest v. Jewish Guild, 309 A.D.2d 546, 765 N.Y.S.2d 326 [1st Dept. 2003].) Yet, summary judgment is appropriate where the defendant has demonstrated an absence of even a prima facie case or if plaintiff has been unable to raise a question of fact concerning either the falsity of defendant's proffered basis for the termination or that discrimination was more likely the real reason. (Ferrante v. American Lung, 90 N.Y.2d 623, [*4]supra.) This employment discrimination proceeding is governed at the summary judgment stage by the burden-shifting analysis established in McDonnell v. Green (411 U.S. 792, 93 S.Ct. 1817 [1973]). Under the McDonnell analysis, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. Hence the plaintiff must allege that he (1) is a member of a protected class, (2) was performing his job satisfactorily, (3) was subject to an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. (Ferrante v. American Lung, 90 N.Y.2d 623, 665 N.Y.S.2d 25 [1997].) If a prima facie case is established, the burden of proof shifts to the defendant to put forth a legitimate, nondiscriminatory reason for the employer's challenged action. Should defendant articulate a legitimate reason for the action, the presumption of discrimination raised by the prima facie case drops, and the burden shifts to the plaintiff to raise a triable issue of fact as to whether the stated reasons for his discharge were pretextual for age discrimination. (Cooks v. NYCTA, 289 A.D.2d 278, 734 N.Y.S.2d 207 [2nd Dept. 2001].) Therefore, defendant can establish a right to summary judgment if it demonstrates that plaintiff lacks evidence establishing each element of the claim, or establishes, without proof to the contrary, that the complained of conduct, to the extent it is supported by evidence, was prompted by legitimate, nondiscriminatory motives.
This court finds that the plaintiff has established a prima facie case of age discrimination. Dr. Trieger is a member of a protected class, as he is over forty years old, and it appears that overall his performance as Chair of the Dental Department, a position he held for over 30 years, was satisfactory. That he was subject to an adverse employment action is evident in his termination by Montefiore. Lastly, his replacement by a 60 years old dentist gives rise to an inference of age discrimination. (Carlton v. Mystic, 202 F.3d 129 [2d. Cir. 2000] finding inference of discrimination raised by fact that plaintiff's duties were transferred to co-workers who were 18-25 years younger than plaintiff, respectively). As Dr. Trieger has established a prima facie case, the burden of proof now shifts to Montefiore to put forth a legitimate, nondiscriminatory reason for the challenged action.
Montefiore meets its burden at this stage of the analysis by explaining that Dr. Trieger was terminated as a result of the disparaging remarks contained in his memo to the other departmental chairs. As mentioned earlier, insubordination provides just cause for the rescission of an employment contract, and substantial deference is given to an employer when such cause exists, especially where high-level managers are concerned. (Speiden v. Innis, 216 A.D. 408, supra; Golden v. Worldvision, 133 A.D.2d 50, supra.) Here, Dr. Trieger argues that the memo cannot be characterized as insubordination. As the court previously discussed, the memo was not intended to praise or flatter the administration but rather to be critical of the administration's policies. The memo is clearly insubordinate on its face, and Dr. Trieger's alleged subjective intent in writing it is inadmissible evidence to show that Montefiore acted with discriminatory animus. As Montefiore has articulated a legitimate, non-discriminatory reason for its action, the presumption of discrimination completely drops out of the picture. (Ferrante v. American, 90 N.Y.2d 623, supra.) Therefore, Montefiore has demonstrated entitlement to summary judgment, unless Dr. Trieger can carry his burden of persuasion and point to evidence that reasonably [*5]supports a finding of prohibited discrimination.
Dr. Trieger alleges he discovered substantial evidence to support his thesis that Montefiore's purported reason for discharging him was a mere pretext. He states that evidence regarding discussions relative to his age can be found on page 76 of his deposition transcript. Upon review of said page, it is apparent that Dr. Trieger is referring to the following passage:
Q.In addition to alleging breach of contract, you have also alleged an age discrimination claim in this lawsuit and I wanted to know what the basis of your allegation of age discrimination is?
A.I think it goes back to my first meeting with Dr. Foreman who pushed me about my plans for retirement, and a lot of it centered on the discussion of my age at that time.
Q.Earlier you testified that the only discussion that was held at that meeting was his question to you as to what your plans for retirement was and your response that you had none?
A.I had not formulated any, yes.
The earlier discussion referred to, which can be found on page 17, reads as follows:
A.The first discussion, as I recall, had to do with asking me what my plans for retirement were, and my answer at that time was I hadn't made any specific plans to retire at a particular age, that I felt well, that I was productive, active, working my 10 to 12 hours a day and had been doing that. We were a very, very busy service and that was the essence of my conversation in response to his question. He said we will get together again and again, as I recall, about three weeks later I had another appointment.
Q.Before we move on to the second meeting, was anything else discussed at the first meeting at which he asked what your plans for retirement were?
A.It was nothing more specific than that that I can recall.
Q.You have no recollection of any conversation in that first meeting beyond simply asking you what your plans for retirement were and your response that you didn't have any?
A.Right.
Q.How long, if you recall, how long do you think that meeting lasted?
A.Twenty minutes.
Q.You have no recollection of him suggesting to you in that first meeting that you step down from your position as chair of the department of dentistry?
A.No.
Dr. Trieger also states that on pages 46-47 of the deposition transcript of Montefiore's president and chief executive officer, Dr. Spencer Foreman, exists evidence that other senior physicians were being systematically discharged and replaced with younger men under [*6]circumstances giving rise to age discrimination charges. The relevant portions of those pages read as follows:
Q.Have there been any claims that Montefiore has been guilty of age discrimination regarding senior faculty members?

MR. ROSENBERG: For the record, I want to note my objection to any generalized inquiry into the area of age discrimination complaints by anybody else other than Norman Trieger. Our position is that it's irrelevant and lacking any foundation.
Subject to those objections for the record, the witness can answer the question to the extent he has any personal knowledge.
A.I don't have specific knowledge of, I cant' recall any specific instances. But if you are aware of any and would like to remind me of them, I may recall them under those cirucmstances.
Q.Are you aware of any age discrimination claim by Dr. Peter Barland?
A.No, but I think there was an age, now that 
MR. ROSENBERG:Just answer the question.
A.No, I was not.
Q.Are you aware of any age discrimination claim by Dr. Leslie Bernstein?
A.I think Bernstein has filed a claim.
Q.By Dr. Stephen Moshman?
A.No.
Q.By Dr. Neil Steigbigel?
A.Yes, I think he did.
Q.All right.
A.And I think on reflection that Barland may have as well.
According to page 78 of Dr. Trieger's deposition transcipt, when asked whether he knew if any of the other senior physicians referred to were being let go had distributed memos critical of the administration, Dr. Trieger replied "[n]ot that I know of."
Dr. Trieger supplemented his opposition papers with copies of three discrimination complaints filed with the New York State Division of Human Rights ("NYSDHR") by senior medical professionals at Montefiore.[FN2] The first one is an October 10, 2001-age discrimination complaint by Dr. Leslie H. Bernstein, who at the time was 67 years old and a Professor of Medicine at Montefiore.[FN3] According to Dr. Bernstein, Montefiore employs more than 10,000 people and the Department of Medicine is composed of more than 400 physicians. In the [*7]complaint, Dr. Bernstein alleges that Montefiore forced him to take compensation cuts, ostensibly for budget reasons, and make demeaning office moves because of his advanced age. The second is a June 2, 1999-age discrimination complaint by Dr. Edward Habermann, who was 65 years old when he was terminated from his position as Chairman of the Department of Orthopedics. According to Dr. Habermann, Montefiore's stated reasons for his termination, that he had not been doing a good job administratively, that he was difficult to get along with, and that his department had lost a large number of staff in recent years, were false and actually based on age discrimination. The third and last complaint is a January 10, 2002-age discrimination complaint by Dr. Neal H. Steigbigel, who was 67 years old when he was terminated from his position as Director of Infectious Diseases Fellowship Program. According to Dr. Steigbigel, Montefiore's stated reason for his termination, financial difficulties at the hospital, was false and actually based on age discrimination.
Dr. Trieger's allegations, and those included in the three aforementioned NYSDHR complaints, describe offensive conduct. On a summary judgment motion, however, where the defendant has made a showing establishing a right to dismissal, the plaintiff's burden in opposing the motion requires more than allegations that, if proven, establish conduct disapproved of by the court. (Forrest v. Jewish Guild, 309 A.D.2d 546, 765 N.Y.S.2d 326 [1st Dept. 2003].) Dr. Trieger must offer evidentiary support not only to establish a prima facie case, but also evidence creating a material dispute of fact as to the showing made by Montefiore. (Id.) Montefiore's stated reason for terminating Dr. Trieger cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason. (St. Mary's v. Hicks, 509 U.S. 502, 113 S.Ct. 2742 [1993].) Dr. Trieger cannot meet his burden on the motion by simply refuting Montefiore's articulated nondiscriminatory reason for terminating him. (Hirschfeld v. Institutional, 260 A.D.2d 171, 688 N.Y.S.2d 31 [1st Dept. 1999].) There was no disparate treatment, as Dr. Trieger was unable to produce evidence that other senior supervisory physicians had issued memos critical of Montefiore but were not terminated. (Roman v. Cornell, 53 F. Supp.2d 223 [N.D.N.Y. 1999].) In addition, Dr. Trieger's use of three complaints of alleged age discrimination cannot be statistically significant when it appears as though there are more than 400 physicians at Montefiore. (Wolfe v. Time, 702 F. Supp. 1045 [S.D.N.Y. 1989].) Dr. Trieger's attempt to use his own self-serving statements from a single page of his deposition transcript, which when viewed with his earlier testimony showed a clear inconsistency, the vague testimony by Dr. Spencer Foreman, and three allegations of age discrimination filed with NYSDHR, cannot satisfy his burden.
The issue is not whether Montefiore acted with good cause, but whether its business decision would not have been made but for a discriminatory motive. (Iole v. Alden, 145 A.D.2d 29, 536 N.Y.S.2d 1000 [1st Dept. 1989].) Whereas most of defendants in the age discrimination cases cited herein were allegedly concerned with productivity or structural reorganization, Montefiore was faced with insubordination. Clearly, Dr. Trieger used his memo to publicly criticize the administration at Montefiore. His insubordination provided just cause for his termination, and substantial deference must be given Montefiore, especially where one of its high-level managers are concerned. (Speiden v. Innis, 216 A.D. 408, supra; Golden v. [*8]Worldvision, 133 A.D.2d 50, supra.) Moreover, it defies logic that Dr. Spencer Foreman, the very same person with whom Dr. Trieger negotiated his three year employment contract with, would one month later terminate Dr. Trieger based on age.
Conclusion
Based on the foregoing, the court determines Montefiore had a legitimate, non-discriminatory reason and just cause for terminating Dr. Trieger. Moreover, Dr. Trieger failed to offer evidence showing that Montefiore's stated reason for his termination was a pretext for discrimination, and thereby creating a material dispute of fact. Montefiore's motion for summary judgment is granted in its entirety and Dr. Trieger's complaint is dismissed. Plaintiff's motion for a preferential trial status is denied as moot.
Defendant, Montefiore, is directed to serve a copy of this decision and order with notice of entry upon all parties via certified mail, within 21 days hereof.
This constitutes the decision and order of the court.
Dated: __________________Hon.
 NELSON S. ROMAN, J.S.C.
Decision Date: March 09, 2004
Footnotes

Footnote 1: The final papers received on this motion was an affirmation in support of defendant's reply to the motion for summary judgment, dated August 5, 2003. The court also received a three page letter from plaintiff's attorney, dated December 5, 2003, setting forth additional argument on the motion.

Footnote 2: The complaints set forth allegations of discrimination. Any opposition papers filed with the NYSDHR against the complaints were not provided. Nor does the court know the final disposition, if any, of the complaints, whether it be dismissal, settlement or judgment.

Footnote 3: Dr. Bernstein is not alleging that he was fired by Montefiore and replaced by a younger person.